

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CODY SCOTT ALEXANDER<br><br>Defendant. | No. 1:21-cr-251 |

### STATEMENT OF FACTS

The United States and the Defendant, CODY SCOTT ALEXANDER ("ALEXANDER") stipulate that the allegations in the criminal information and the following facts are true and correct, and that had the matter gone to trial, the United States would have proven the following facts beyond a reasonable doubt:

1. From at least 2019 and continuing until approximately June 2021, the defendant, CODY SCOTT ALEXANDER, within the Eastern District of Virginia and elsewhere, combined, conspired, and agreed together with others, known and unknown, to unlawfully, knowingly, and intentionally distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841 and 846.

2. ALEXANDER worked with sources of supply to obtain distribution quantities of methamphetamine that he distributed throughout the Washington, D.C. Metropolitan Area ("WMA"), including the Eastern District of Virginia.

3. Specifically, starting in at least early 2020, ALEXANDER obtained pound-quantities of methamphetamine for re-distribution throughout the WMA.

4. In approximately 2019, ALEXANDER was introduced to Daniel Ramirez (Ramirez) and began selling methamphetamine to Ramirez. Thereafter in 2020, ALEXANDER supplied Ramirez, and others, with methamphetamine sourced from an Arizona-based supplier. ALEXANDER arranged for shipments of parcels containing pound quantities of methamphetamine from Arizona to be delivered to various addresses in the WMA, including a Vienna, Virginia address and Alexandria, Virginia address, both located in the Eastern District of Virginia, for redistribution.

5. During the course, and in furtherance of, the conspiracy, ALEXANDER gathered parcels containing pound quantities of methamphetamine from addresses in the WMA. ALEXANDER arranged for others to accept parcels containing pound quantities of methamphetamine on ALEXANDER's behalf. ALEXANDER would compensate the individuals who accepted parcels on his behalf by supplying those individuals with quantities of methamphetamine each time an individual received a parcel containing methamphetamine. ALEXANDER also directed others to collect and deliver to him parcels containing methamphetamine, including parcels that had been mailed by ALEXANDER to the addresses in the Eastern District of Virginia.

6. ALEXANDER directed others, including Ramirez, to distribute quantities of methamphetamine to ALEXANDER's customers when ALEXANDER was unavailable to distribute the methamphetamine himself.

7. ALEXANDER travelled to Phoenix Arizona to obtain pound quantities of methamphetamine on multiple different occasions, including, but not limited to:

    a. On or about June 9, 2020, ALEXANDER flew with two other individuals on American Airlines flight number 1634 from Ronald Reagan Washington

    National Airport in Arlington, Virginia to Phoenix, Arizona to obtain methamphetamine;

b. On or about June 30, 2020, ALEXANDER flew on American Airlines flight number 1634 from Ronald Reagan Washington National to Phoenix, Arizona to obtain methamphetamine;

c. On or about August 23, 2020, ALEXANDER flew on American Airlines flight number 1218 from Ronald Reagan Washington National Airport to Phoenix, Arizona to obtain methamphetamine;

d. On or about September 24, 2020, ALEXANDER flew on American Airlines flight number 1218 from Ronald Reagan Washington National Airport to Phoenix, Arizona to obtain methamphetamine;

e. On or about September 29, 2020, ALEXANDER and Ramirez flew together on American Airlines flight number 1844 from San Francisco, California to Phoenix, Arizona to obtain methamphetamine;

f. On or about October 24, 2020, ALEXANDER flew on American Airlines flight number 1218 from Ronald Reagan Washington National Airport to Phoenix, Arizona to obtain methamphetamine;

g. On or about November 21, 2020, ALEXANDER flew on American Airlines flight number 1242 from Ronald Reagan Washington National Airport to Phoenix, Arizona to obtain methamphetamine;

h. On or about January 18, 2021, ALEXANDER and Ramirez flew together on American Airlines flight number 2438 from Ronald Reagan Washington National Airport to Charlotte Douglas International Airport and then

     American Airlines flight number 2329 from Charlotte Douglas International Airport to Phoenix, Arizona to obtain methamphetamine;

  i. On or about February 21, 2021, ALEXANDER flew on American Airlines flight number 1242 from Ronald Reagan Washington National Airport to Phoenix, Arizona to obtain methamphetamine.

  j. On or about May 25, 2021, ALEXANDER flew on American Airlines flight number 508 from Ronald Reagan National Airport to Phoenix, Arizona to obtain methamphetamine.

On each occasion, while in Phoenix, Arizona, ALEXANDER met with his source of supply for methamphetamine and purchased multiple pounds of methamphetamine. On each occasion, ALEXANDER then repackaged the methamphetamine into pound, or multi-pound, quantities and placed the repackaged methamphetamine into separate parcel packages. ALEXANDER then shipped those parcels containing methamphetamine to addresses in the WMA.

8. On October 3, 2020, at Ramirez's request, an unindicted co-conspirator (UCC-1) received a parcel containing approximately one pound, or approximately 453 grams, of methamphetamine at UCC-1's address in Vienna, Virginia. On October 4, 2020, UCC-1 delivered the methamphetamine to Ramirez in the District of Columbia, and Ramirez then gave the methamphetamine to ALEXANDER. ALEXANDER shipped that parcel from Phoenix, Arizona.

9. On November 18, 2020, in the District of Columbia, ALEXANDER distributed approximately 227.9 grams of methamphetamine to a cooperating source ("CS-1") in exchange for $4,000 in law enforcement evidence funds.

10. On November 27, 2020, law enforcement intercepted two United States Postal Service (USPS) parcels, that had been shipped from Arizona to UCC-1's Vienna, Virginia address,

at Dulles International Airport. Those two parcels contained a net weight of approximately 893 grams of methamphetamine. ALEXANDER shipped those parcels from Phoenix, Arizona.

11. In February of 2021, law enforcement intercepted a parcel intended for delivery in the District of Columbia that had been shipped from Arizona. A search of that parcel revealed that it contained approximately 751 grams of methamphetamine. ALEXANDER shipped that parcel from Phoenix, Arizona.

12. In May 2021, law enforcement intercepted three USPS parcels, containing methamphetamine that had been shipped from Arizona to addresses in the WMA. The combined weight of the methamphetamine contained in three parcels was approximately six pounds or approximately 1,360 grams. ALEXANDER shipped those parcels from Phoenix, Arizona.

13. On June 4, 2021, law enforcement executed a search warrant at ALEXANDER and Ramirez's shared residence in the District of Columbia. Law enforcement seized approximately two pounds, or approximately 907 grams, of methamphetamine. ALEXANDER had obtained that methamphetamine from his source of supply in Phoenix, Arizona. Law enforcement also seized approximately 20 to 25 gallons of Gamma-Hydroxybutyric acid (GHB), a schedule I controlled substance, all of which belonged to ALEXANDER for the purpose of redistribution.

14. During the relevant time-period, ALEXANDER was personally involved in the distribution of, or it was foreseeable to him that his co-conspirators would distribute at least 5 kilograms but less than 15 kilograms of methamphetamine.

15. The acts described above were done willfully and knowingly and with the specific intent to violate the law and not by accident, mistake, inadvertence, or other innocent reason. This Statement of Facts does not contain each and every fact known to the defendant and to the United

States, and it is not intended to be a full enumeration of all the facts surrounding the defendant's charges.

16. The defendant waives any rights that the defendant may have under Fed. R. Civ. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any proceeding.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: 11/16/2021

By: /s/
Ryan B. Bredemeier
David A. Peters
Assistant United States Attorneys
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel.: (703)-299-3899
Fax: (703) 299-3850
ryan.bredemeier@usdoj.gov

Defendant's Stipulation and Signature

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate and that, if the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 11/16/2021

Cody Scott Alexander,
Defendant

Defense Counsel's Signature

I am Gene Rossi, the attorney for Defendant Cody Alexander. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is informed and voluntary.

Date: Tuesday 11/16/2021

Gene Rossi, Esq.
Counsel for Defendant